IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

TERESA LYNN STEARNS,

    Plaintiff,

v.                                                   Civil Action No. 3:16-cv-06710

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## **MEMORANDUM OPINION**

Pending before this Court is Plaintiff's Brief in Support of Judgment On the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14). This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.

Background

Claimant, Teresa Lynn Stearns, filed applications for DIB and SSI on January 18, 2013. Claimant alleged disability beginning May 1, 2009. The applications were denied initially on June 6, 2013, and upon reconsideration on October 9, 2013. Claimant filed a request for hearing on November 20. 2013. A video hearing was held on February 4, 2015. Claimant appeared in Huntington, West Virginia, and the Administrative Law Judge presided over the hearing from St. Louis, Missouri. The Administrative Law Judge (ALJ) denied Claimant's applications on February 9, 2015 (Tr. at 9-19). The Appeals Council denied Claimant's request for review on May 24, 2016 (Tr. at 1-3). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

1

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first

three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The

> decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the amended alleged onset date of January 1, 2011, and meets the insured status requirements through December 31, 2016 (Tr. at 12). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: diffuse degenerative changes of the lumbar spine, bipolar disorder NOS, generalized anxiety disorder, panic disorder and polysubstance dependence that is in remission. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 13). The ALJ then found that Claimant has a residual functional capacity to perform a range of work at the light exertional level (Tr. at 15). The ALJ found Claimant would have the following limitations: Claimant cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs, stoop, kneel, crouch or crawl. She is further limited to simple, routine tasks that do not involve interaction with the general public and only occasional interaction with coworkers. (*Id.*) The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 18). The ALJ concluded that considering Claimant's age, education, work experience and residual functional capacity (RFC), there were jobs that existed in significant numbers in the national economy that she could perform such as assembler of small products and photocopy machine operator (Tr. at 19). Consequently, Claimant was found not under a disability. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant has a driver's license (Tr. at 52). Claimant has been married and divorced four times (Tr. at 58). She lives with her boyfriend (Tr. at 59). Claimant has two adult daughters (Tr. at 58).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Administrative Law Judge's (ALJ) decision is not supported by substantial evidence because the ALJ's residual functional capacity (RFC) analysis failed to accurately address all of Claimant's limitations (ECF No. 11). Claimant argues that the ALJ's

decision is not supported by substantial evidence when the ALJ disregarded the opinion of the Vocational Expert (VE) who testified that Claimant is incapable of substantial gainful activity. (*Id.*)  In response, Defendant asserts that the ALJ properly addressed all of Claimant's "credibly established limitations in the RFC assessment" (ECF No. 14).  Defendant asserts that substantial evidence supports the ALJ's decision "not to rely on limitations included in the most restrictive of several questions he posed to the VE." (*Id.*)

The Medical Record

On May 3, 2007, the Holzer Medical Center took a MRI scan Claimant's right knee.  The results reflected that Claimant's anterior cruciate ligament was "completely" torn (Tr. at 598-599). The MRI reported that "There is a moderately sized tear involving the posterior horn of the medial meniscus." (*Id.*)

Medical records from Prestera Center for Mental Health, Inc., regarding the time period of April 5, 2012, through February 21, 2013, reflect that Claimant has a GAF[1] of 50 (Tr. at 342-484). Claimant was repeatedly diagnosed with Bipolar Disorder (Tr. at 392, 397).  Claimant's records reflect that she has a history of substance abuse.

Murray S. Willock, M.D., at Holzer Clinic, Claimant's primary care physician, saw

---

[1] The Global Assessment of Functioning (GAF) is a scale used to rate overall psychological functioning. Ranging from 0 to 100, a GAF score is a subjective determination, usually made by a psychologist or psychiatrist, that represents the clinician's judgment of the patient's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

In general, GAF scores of 50 and below are considered to be inconsistent with an ability to perform full-time work, and therefore disabling under social security's rules, as well as under the definition of disability in most disability insurance plans. *See, e.g., Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (collecting cases, noting vocational and medical expert testimony that GAF score of 50 or below is inconsistent with full-time work).

7

Claimant on September 11, 2012, due to complaints of depression, anxiety and abdominal cramps associated with Menopause (Tr. at 337-338). Additionally, Dr. Willock noted that Claimant's visit was to complete screening exams for osteoporosis and a cervical neoplasm (Tr. at 337-339). In October 2012, Claimant sought treatment at Prestera Center for Mental Health Services for opioid dependence. Addiction counselor Zachary Taylor, M.A., completed Claimant's intake screening. Claimant was discharged from Prestera in April 2012 and November 2012 (Tr. at 474- 476). Claimant returned to Prestera in December 2012 (Tr. at 377- 389). She was diagnosed by Mr. Taylor with bipolar disorder and opioid dependence, and assigned a GAF score of 50[2] (Tr. at 392-393, 397, 404). Mr. Taylor performed a mental status examination (MSE) of Claimant (Tr. at 391-392, 395-396). Claimant's results were normal for appearance, sociability, speech, orientation, memory and affect, but deficient in coping ability. (*Id.*)

On April 26, 2013, Dr. Willock saw Claimant due to complaints of anxiety, depression and a urinary tract infection (UTI) (Tr. at 489). Dr. Willock noted that Claimant wore "shaggy purple hair and dense makeup suggesting some other emotional problems" (Tr. at 490).

Lester Sargent, M.A., an examining consulting psychologist, completed an Adult Mental Status Examination of Claimant on May 29, 2013 (Tr. at 491-498). Mr. Sargent reported that Claimant suffers from bipolar disorder, generalized anxiety disorder and panic disorder without agoraphobia with a poor prognosis. (*Id.*) Mr. Sargent opined that Claimant has a depressed and anxious mood (Tr. at 495). Mr. Sargent reported that Claimant displayed evidence of mild paranoid ideation and mild psychomotor agitation. (*Id.*) Claimant's insight was fair. Claimant's judgment was moderately impaired. Her immediate memory was found "severely impaired." Claimant's recent memory was moderately impaired and her remote memory was mildly impaired.

---

[2] The Global Assessment of Function (GAF) is a way of describing a person's symptoms and mental abilities along a scale of 1 to 100. The better the score, the better the function. This rating system applies only to mental disorders.

8

(*Id.*) Claimant's concentration was moderately impaired, yet her persistence was mildly impaired. Mr. Sterns found that Claimant's social functioning was moderately impaired. (*Id.*)

A report by the medical review team of the West Virginia Department of Health and Human Resources dated June 21, 2013, stated that Claimant is unable to perform full-time work and this inability is expected to last 1 year (Tr. at 513-515).

On July 5, 2013, Claimant went to the Pleasant Valley Hospital Emergency Room with the chief complaint of a back injury from falling down steps (Tr. at 508). Claimant was diagnosed with lumbar contusion, sacral contusions and muscle spasm. (*Id.*) Suresh K. Agrawal, M.D., reviewed a radiology report of Claimant's lumbar spine and found minimal osteophyte formation, the suggestion of mild diffuse degenerative change and no significant acute findings (Tr. at 510). The radiology report concluded that "Mild diffuse degenerative changes are suggested. No significant acute findings are suspected." (*Id.*) The radiology report regarding Claimant's sacrum/coccyx found no fracture, destructive process or other abnormalities (Tr. at 512). Dr. Agrawal concluded that the examination was unremarkable. (*Id.*) On July 10, 2013, Claimant returned to the Pleasant Valley Hospital Emergency Room with complaints of abdominal pain, with associated nausea and vomiting (Tr. at 500).

On approximately August 14, 2013, a is Julie Lynn Vannoy, A.R.N.P., on the medical review team (MRT) of the West Virginia Department of Health and Human Resources (DHHR), performed at physical examination of Claimant (Tr. at 513-515). Claimant reported to the examining physician that her knee and arm pain made it impossible for her to sit or stand for more than 10-15 minutes because of knee pain (Tr. at 513-514). Notes from the physical examination of Claimant indicated that Claimant is unable to perform full-time work for a period of one year

due to knee pain and bi-polar disorder (Tr. at 514). She was diagnosed with nausea and instructed to stop drinking soda (Tr. at 503).

Claimant visited the Pleasant Valley Hospital ER on February 15, 2014, with the chief complaint of an acute headache (Tr. at 539). The patient record reflects that Claimant was treated in the ER by Daniel Trent, D.O., and by Claimant's primary care physician, Dr. Vannoy. (*Id.*) On April 28, 2014, Claimant was seen by ER attending physician James Toothman, D.O., at Pleasant Valley Hospital for a head injury (Tr. at 546). On May 3, 2014, Dr. Toothman, treated Claimant for "assault, head contusion, rib contusion" (Tr. at 552- 554). A facial examination and CT scans of Claimant's head and chest following the traumatic head injury returned normal results (Tr. at 546, 548, 550).

<u>Weight of Medical Opinions</u>

Under 20 CFR 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not

have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the AC are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the AC are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[3] of §§ 404.1527 and 416.927.

---

[3] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

In the present case, the ALJ stated:

> As for the opinion evidence, little weight is given to the opinion of the State agency medical consultants, who opined the claimant did not have a severe physical impairment, as imaging demonstrated the claimant had degenerative changes in her lumbar spine. (Exhibits 1A & 5A; 6F pg. 12).
>
> Great weight is given to the opinion of the State agency psychological consultants, who opined the claimant could perform simple, routine work activity with limited social interaction. (Exhibits 1A & 5A) This opinion is consistent with the objective medical evidence of record, which showed the claimant to at times have a labile affect and problems with her memory. (Exhibit 2F pg. 60; 5F) The undersigned, however, has modified their opinion to preclude all interaction with the general public based upon the claimant's testimony, and has included no limitations regarding supervisors, as the claimant testified that she has no problems interacting with them. (Tr. at 17).

The ALJ did not state what weight, if any, was given to Claimant's treating physicians and psychiatrists. Additionally, the ALJ did not specify the consultants' names when stating the different weights given to their opinions. In fact, the ALJ did not refer to any physician or psychiatrist by name in the entire decision. As such, the analysis is incomplete and precludes meaningful review.

## Conclusion

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did

12

not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

All other issues will not be discussed at this time due to the recommendation to remand for reconsideration of the record of evidence as a whole.

For the reasons provided above, the undersigned finds that the ALJ's lack of explanation for the weight afforded to the treating and consulting medical and psychiatric opinions renders the ALJ's analysis incomplete and precludes meaningful review. Therefore, this Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) is **GRANTED** to the extend Claimant seeks remand, the Brief in Support of Judgment on the Pleadings (ECF No. 14) is **DENIED**, the final decision of the Commissioner is **REMANDED** for further proceeding pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Enter: September 20, 2017.

Dwane L. Tinsley
United States Magistrate Judge